UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

RICHARD VILLELLA,

              Defendant.

------------------------------------------X

07 Cr. 287-02 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/25/07

Sweet, D.J.,

        On April 11, 2007, defendant Richard Villella ("Villella") allocuted to one count of tax evasion in violation of 26 U.S.C. § 7201, a Class D felony. For the reasons set forth below, Villella will be sentenced to a term of probation of 60 months. Villella will also be required to pay restitution as determined by the Internal Revenue Service ("IRS"), a fine of $5,000, and a mandatory assessment of $100.

**Prior Proceedings**

        Villella initially appeared on April 11, 2007, and was released that same day on his own recognizance. An information was filed in the Southern District of New York on April 11, 2007, charging that from on or about January 1 of each of calendar years 1996, 1997, and 1998, through on or about the tax return due dates for each of those calendar years, Villella failed to file Individual United States Tax Returns, Forms 1040, for the income he

earned, including: (1) $63,140 in tax due and owing on taxable income of $170,785 for calendar year 1996; (2) $22,482 in tax due and owing on taxable income of $55,085 for calendar year 1997; and (3) $13,132 in tax due and owing on taxable income of $34,555 for calendar year 1998.

On April 11, 2007, Villella apeared before the Honorable Douglas F. Eaton of this district and allocuted to the charged criminal conduct in accordance with a plea agreement entered into with the Government. Villella's guilty plea was accepted by this Court on April 20, 2007. He is scheduled to be sentenced on October 18, 2007.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed --

2

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

3

**The Defendant**

The following description draws on the Pre-Sentence Investigation Report prepared by the Probation Office of the United States District Court for the Southern District of New York on June 5, 2007, and revised on July 3, 2007 (the "PSI").

Richard Otto Villella was born on January 18, 1959, in Martins Ferry, Ohio. Villella characterized his childhood as "idyllic" and stated that he comes from a very close family.

Villella married his wife in New York City in 1998. At the time of the PSI, he and his wife had two children, ages five and two, and were expecting a third in September 2007. Villella has said that he moved out of New York City because he did not want to introduce his children to the "fast-paced" lifestyle of city life. He has also stated that being a parent is very important to him, and he tries to spend as much time as possible with his children.

Villella's wife related that at the time of the instant offense, the defendant was reading a great deal about the U.S. Constitution. She said that he subsequently became involved with an organization called "Save a Patriot," which advocates that citizens are being taxed incorrectly. She indicated that as far as she is aware, Villella paid his taxes correctly prior to his

4

involvement with this organization. She also indicated that she earns between $30,000 and $40,000, which is not enough to support the family on her own. She advised that if Villella is incarcerated, it would be a "big loss" for the entire family.

Villella is in good physical health, does not take any prescription medication, and has reported no history of mental or emotional disorders. He noted no problems with drugs or alcohol in the past and indicated that he has never attended a treatment program for drug or alcohol problems. At the time of the presentence interview, Villella tested negative for all illicit substances tested.

Villella graduated from Brown University in 1981 with a degree in economics. He graduated from Jackson High School, located in Massilon, Ohio, in June 1977 and ranked 45 in a class of 397.

From 1981 to 1983, Villella played professional football for the New England Patriots. Villella advised that he was involved with several of the charitable organizations that the National Football League sponsored. During his first off-season, Villella was involved with the United Way, the Special Olympics, and an organization known as Apple Way. Villella mentioned that through his work with Apple Way, he spoke in various elementary schools and discussed "consequences" with Fifth and Sixth graders.

5

Villella reported that during his second off-season, he entered the executive training program for Fleet National Bank, but he subsequently decided that he did not enjoy professional football or the business world.

Based on a friend's suggestion, Villella became involved in modeling, relocated to New York City, and signed with Zoli Management. After about one year, Villella signed with Ford Models Inc. and continued to model for approximately nine years. Villella reported that he was never truly satisfied with modeling and took acting lessons and applied to various business schools as well.

After he retired from football, Villella had begun to take yoga classes. He started teaching yoga classes and consistently earned more money through yoga than through modeling. During the late 1980's or early 1990's, along with his partner Alan Finger, Villella opened four yoga studios in New York. According to Villella, Finger was "divisive," negotiated with a third party without Villella's knowledge, and decided to take over the company. Villella ultimately quit the company, disappointed that he had devoted so much time and energy to the company and yet received nothing in return.

For about the past ten years, Villella has provided private yoga instruction for individuals, specializing in therapy for people who have suffered specific injuries. He maintains an

office in New York City, sees six to eight clients a day, and earns about $150,000 per year (gross).

Villella has made a submission to the Court, dated July 5, 2007, attached to which are numerous letters from individuals who know Villella and attest to his good character.

With respect to Villella's ability to pay, Villella has a reported net worth of approximately $346,837 and a net monthly cash flow of $4,863. Villella reportedly owes more than $13,600 in credit card debt. He also makes monthly payments on a home equity loan, a real estate mortgage, and an automobile loan.

**The Offense Conduct**

The following description draws on the PSI. The specific facts of the underlying conduct are adopted as set forth in that report.

For the calendar years 1996, 1997, and 1998, Villella was a yoga instructor and was paid compensation for the yoga services he performed. At his request, the yoga instruction companies that paid him for his services did not issue him IRS Forms 1099 or W-2 during the period 1996, 1997, and 1998. Additionally, in connection with the lessons he gave to private individuals and to certain clients of the yoga instruction companies for which he worked,

7

Villella agreed with the private individuals and clients that he would be paid in cash rather than by check or other means. Villella deposited this cash into bank accounts and trusts in the names of entities and individuals other than his own name.[1] Villella failed to file Individual United States Income Tax Returns, Forms 1040, for the calendar years 1996, 1997, and 1998, for the income he earned, including: (1) $63,140 in tax due and owing on taxable income of $170,785 for calendar year 1996; (2) $22,482 in tax due and owing on taxable income of $55,085 for calendar year 1997; and (3) $13,132 in tax due and owing on taxable income of $34,555 for calendar year 1998. This resulted in a total of $98,754 that Villella failed to pay for tax years 1996, 1997, and 1998. Including state tax loss, Villella failed to pay $111,000 for tax years 1996, 1997, and 1998.[2]

**The Relevant Statutory Provisions**

The maximum term of imprisonment is a term of five years, pursuant to 26 U.S.C. § 7201. In addition, pursuant to 18 U.S.C. § 3583(b)(2), a term of not more than three years' supervised release may be imposed if a sentence of imprisonment is imposed.

---

[1] The bank account was in the name of his then girlfriend, now his wife.

[2] In addition, the defendant failed to file tax returns for the 1995 tax year resulting in an additional tax loss of $55,617.05, although the Government has indicated that it would be difficult to prove this amount.

8

Villella is eligible for not less than one nor more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, pursuant to 18 U.S.C. § 3563(a)(2), one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is the greater of $250,000 or twice the pecuniary loss or gain, pursuant to 18 U.S.C. § 3571. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Full restitution to the victims, the IRS and the New York State Department of Taxation and Finance, may be ordered as a condition of probation or supervised release pursuant to 18 U.S.C. §§ 3563 and 3583 in an amount to be determined by the IRS.

**The Guidelines**

The November 1, 1998, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(b)(1).

The Guideline for violations of 26 U.S.C. § 7201 is found in U.S.S.G. § 2T1.1. Pursuant to U.S.S.G. § 2T1.1(a)(1), the base offense level is to be derived from U.S.S.G. § 2T4.1 (Tax Table). Because the total tax loss is approximately $111,000, the base offense level is 14.

Based on his plea allocution, Villella has shown recognition of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels.

Villella's resulting adjusted offense level is therefore 12.

Villella has no known prior criminal convictions. Thus, Villella has no criminal history points and a Criminal History Category of I.

Based on a total offense level of 12 and a Criminal History Category of I, the Guidelines range for imprisonment is 10 to 16 months. Pursuant to U.S.S.G. § 5C1.1(d), the minimum term of

imprisonment may be satisfied by: (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.

The Guidelines range for a term of supervised release is at least two but not more than three years, pursuant to U.S.S.G. § 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to U.S.S.G. § 5D1.1(b). Supervised release is required if the court imposes a term of imprisonment of more than one year or when required by statute, pursuant to U.S.S.G. § 5D1.1(a).

Pursuant to U.S.S.G. § 5B1.1, application note 2, Villella is not eligible for probation because the applicable Guidelines range is in Zone C of the Sentencing Table.

The Guidelines fine range for the instant offense is from $3,000 to $30,000, pursuant to U.S.S.G. § 5E1.2(c)(3). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,036.92 to

11

be used for imprisonment, a monthly cost of $294.60 for supervision, and a monthly cost of $1,799.04 for community confinement.

Restitution shall be ordered as a mandatory condition of probation, pursuant to U.S.S.G. § 5B1.3(a)(2), and when there is an identifiable victim and a restitution order is authorized by statute, pursuant to U.S.S.G. § 5E1.1(a)(1).

### The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). Section 3553(a) also requires the Court to consider "the kinds of sentences available" and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(3) & (7).

Having considered all of the factors set forth in § 3553(a), it is determined that a non-Guidelines sentence is warranted in the instant case, as suggested by the parties (see PSI, at 4) and recommended by the Probation Office. Villella has been convicted of a non-violent crime and has no prior criminal record. Furthermore, his continued employment will aid in the collection of restitution payments to the victims of the offense.

**The Sentence**

For the instant offense, Villella is hereby sentenced to a term of probation of sixty months. In addition, Villella is to pay a fine of $5,000; restitution in an amount to be determined by the IRS, to be paid to the Clerk of the Court for disbursement to the IRS and New York State Department of Taxation and Finance; and a mandatory special assessment of $100 to be paid to the United States immediately. Other than the mandatory special assessment which is due immediately, any money paid by Villella shall first be applied to satisfy the order of restitution.

As Villella has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community, he is deemed a good candidate for voluntary surrender, pursuant to 18 U.S.C. § 1343(a)(2)(B).

Villella is therefore directed to report to the nearest Probation Office within 72 hours of the imposition of this sentence to commence his term of probation. It is recommended that Villella be supervised by the district of his residence.

As mandatory conditions of his period of probation, Villella shall:

(1) not commit another federal, state or local crime;

(2) not illegally possess a controlled substance;

(3) not possess a firearm or destructive device; and

(4) cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to the Court's determination that Villella poses a low risk of future substance abuse.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

(1) Villella shall cooperate with the IRS and the New York State Department of Taxation and Finance to pay all outstanding taxes, interest and penalties;

(2) Villella shall provide the probation officer with access to any requested financial information;

(3) Villella shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Villella is in compliance with the installment payment schedule; and

14

(4) Villella shall perform 500 hours of community service as directed by the probation officer.

The terms of this sentence are subject to modification at the sentencing hearing set for October 18, 2007.

It is so ordered.

New York, NY
September 25, 2007

ROBERT W. SWEET
U.S.D.J.